# UNITED STATES DISTRCT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**ATUL C. SHAH,**

   **Plaintiff,**

                              **Case No. 09-cv-14038**

**Vs.**

                              **HON. MARIANNE O. BATTANI**
**GENERAL MOTORS**                    **Magistrate Judge Mark A. Randon**
**COMPANY, a/k/a**
**MOTORS LIQUIDATION**
**COMPANY, formerly known**
**As GENERAL MOTORS**
**CORPORATION, a Michigan**
**Corporation, BASHEN**
**CORPORATION. a Texas**
**Corporation doing business in**
**Michigan,**

   **Defendants.**

_____/

**Atul C. Shah**
**Plaintiff,** *In Pro Per*
**2884 Manorwood Drive**
**Troy, Michigan, 48085**
**(248) 835-5025**

**Alex A. Alexopoulos (P40457)**
**Lipson, Neilson, Cole, Seltzer**
**& Grain, P.C.**
**Attorneys for Defendant BASHEN**
**Only**
**Bloomfield Hills, Michigan, 48302**
**(248)593-5000**

_____/

U.S. DISTRICT COURT
EAST DISTRICT MICH
DETROIT 48226

'10 FEB 24 A9 49

FILED

1

## PLAINTIFF'S RESPONSE TO DEFENDANT
## BASHEN CORPORATION'S MOTION TO
## DISMISS PLAINTIFF'S COMPLAINT
## AND/OR FOR SUMMARY JUDGMENT

I, Atul C. Shah, Plaintiff, representing myself in this case, hereby respond

As follows to BASHEN CORPORATION'S Motion to Dismiss pursuant to

Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 56(c).

1. I admit the allegations in Paragraph One and add that BASHEN was incorrectly listed as a "affiliate of General Motors. This mistake was not my fault, the E.E.O.C. shortly before I filed my federal lawsuit listed the Respondent in my EEOC CASE as General Motors Corporation c/o (in care of BASHEN CORPORATION). No other information was provided about BASHEN by the EEOC or by General Motors.

2. I admit the allegations in Paragraph Two but add that the identity of BASHEN and its role in this case were concealed and hidden from me; I received no notice and no information from BASHEN during the pendancy of the EEO complaint and investigation process before filing the EEO LAWSUIT IN YOUR HONOR'S COURT.. The only information I received was a Notice from the Equal Employment Opportunity Commission listing the name correctly and listing the Respondent as "GENERAL MOTORS COMPANY c/o BASHEN CORPORATION. Moreover, BASHEN has still not answered the Complaint. Since I had no information about BASHEN except that EEOC listed them as a Respondent along with General Motors, Bashen had to have something to do with my dismissal and since time was running out on my ability to file in federal court, I included BASHEN as a Defendant. Later, I clarified the additional information I had about Bashen Corporation in my Response to your Order to Show Cause for Lack of Progress/Service. I also attached timely Proof of Service on both General Motors Company and upon BASHEN CORPORATION. Through my research, I no longer believed that BASHEN was affiliated with General Motors, I learned that BASHEN did INVESTIGATIONS FOR THE EEOC.

3. Deny for the reason it is untrue in the facts of this case. I have learned facts that the Judge may give me a cause of action against BASHEN for conspiracy to deprive me of my civil rights and for retaliation for having filed my EEOC charge in this case. There are other bases for liability under Title VII other than simply an employment relationship. I ask for permission to amend my complaint to add these charges. Since BASHEN has not even answered the complaint, it will suffer no prejudice.

4. Admit, concurrence was sought in writing which I received on the very day the threatened deadline was at hand. Without any appearance being filed, Attorneys purporting to represent BASHEN, in a letter dated January 19, 2010, stated that BASHEN and GM were not affiliated and that BASHEN had no role in my termination. They threatened that if I did not write them that I would voluntarily dismiss my case by the 22nd (the day I received their letter), they would file a motion to dismiss which is now before the Court.

5. The Defendant's exhibits attached to its Motion actually support my Position not the Defendants'.

**WHEREFORE, I ASK THAT BECAUSE OF THE CONFUSION CAUSED BY THE EEOC AND THE BASHEN CORPORATION DURING THE EEO Process about the role of the BASHEN CORPORATION IN MY CASE, IF THE COURT DEEMS IT APPROPRIATE TO DISMISS MY CASE, THAT NO ATTORNEY FEES OR COSTS BE AWARDED. FURTHER, I ASK THAT THE CASE AGAINST BASHEN NOT BE DISMISSED AND ITS MOTIONS BE DENIED FOR THE REASONS SET OUT IN THE ACCOMPANYING BRIEF.**

Sincerely,

**ATUL C. SHAH**
**Plaintiff, *In Pro Per***

January 23, 2010

3

UNITED STATES DISTRCT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATUL C. SHAH,

    Plaintiff,

vs.

GENERAL MOTORS
COMPANY, a/k/a
MOTORS LIQUIDATION
COMPANY, formerly known
As GENERAL MOTORS
CORPORATION, a Michigan
Corporation, BASHEN
CORPORATION. a Texas
Corporation doing business in
Michigan,

    Defendants.
_____/

Case No. 09-cv-14038

HON.  MARIANNE O. BATTAIN
Magistrate Judge Mark A. Randon

Atul C. Shah
Plaintiff, *In Pro Per*
2884 Manorwood Drive
Troy, Michigan, 48085
(248) 835-5025

Alex A. Alexopoulos (P40457)
Lipson, Neilson, Cole, Seltzer
& Grain, P.C.
Attorneys for Defendant BASHEN
Only
Bloomfield Hills, Michigan, 48302
(248)593-5000

_____/

4

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT BASHEN CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR FOR SUMMARY JUDGMENT

Dear Judge Battani:

Thank you for allowing me the opportunity to respond to Bashen's motion.

Thank you for giving me an extension of ten days to respond so I could attend my daughter's wedding in India. The Wedding was on February 6th And 7th, 2010.

As you know, in response to your Show Cause Order to me for Lack of Process/Lack of Service, I have asked for voluntary dismissal of General Motors Corporation because they are still currently in bankruptcy and their Attorneys have agreed to add my name to the Matrix and List of Debtors for GM. I agreed to this because it became clear that the Bankruptcy Court is the appropriate forum and that court will hear my case against G.M.

I DID THAT BECAUSE I FELT, AFTER INVESTIGATING AND RESEARCHING THE MATTER THAT WAS THE RIGHT THING TO DO.

Now, Bashen has filed a Motion to Dismiss my case against them because they say they had nothing to do with my termination, I was not their employee, they were not my employer and there is no possible way I can state an action against them so my complaint should be dismissed and I should pay for costs and attorney fees.

## BASHEN CORPORATION CAUSED THE PROBLEM WHICH LED TO THEM BEING NAMED IN MY LAWSUIT AGAINST GENERAL MOTORS THEREFORE IF THE CASE IS DISMISSED I SHOULD NOT BE PENALIZED WITH ATTORNEY FEES AND COSTS

The identity of BASHEN CORPORATION and its role in this case were concealed and hidden from me; I received no notice and no information

from BASHEN during the pendancy of the EEO complaint and investigation process before filing MY EEO LAWSUIT IN YOUR HONOR'S COURT..

My first awareness that BASHEN CORPORATION had any involvement in my case came through the EEOC'S "NOTICE OF DISPOSITION AND ORDER OF DISMISSAL, DATED September 15, 2009, mailed the next day and received by me shortly after that. [EXHIBIT "A"] **That document correctly identified myself as the Claimant but then lists the Respondent as "General Motors Corporation c/o Bashen Corporation 1600 South Voss, Suite 300, Houston, TX 77057.**

This was puzzling because I had never known anything of BASHEN CORPORATION before I received that notice. I assumed that with Bashen Corporation listed as a Respondent in my case, along with the notation that my charge was against General Motors in care of Bashen Corporation, I felt the EEO had uncovered another entity that was involved in my case—an entity that was somehow related to GM in my claim. I thought BASHEN may have been a contractor for GM that was responsible for the Contract Physicians.

I looked on the internet for BASHEN CORPORATION and found that they were a  profit making EEO company, high profile and they claimed they did EEO investigations…so I assumed they must have done my investigation for Detroit's EEO office where my claim was being processed.

That is why in my Response to Show Cause [EXHIBIT "B" at Paragraph 30, I wrote:  This Court still has jurisdiction over the Bashen Corporation which is a Texas Corporation, employed as an independent contractor by the Equal Employment Opportunity Commission as an Investigator for Civil Rights Complaints.

Again, in Paragraph 31, I wrote:  The Bashen Corporation failed to conduct any investigation into my case and therefore I was again deprived of due process of law by this Defendant again because of my race and my religion. My [EEO] complaint was dismissed summarily because this "investigator" decided, without investigating the case, that it had no merit."

Finally, in Paragraph of my Response to Show Cause,  I wrote: "I ask that I be provided to amend my complaint against BASHEN CORPORATION to add other claims, if necessary.

Not until I served my summons and complaint in this case against
BASHEN, did I hear from attorneys claiming they represent BASHEN in
my case and demanding I voluntarily dismiss my case against BASHEN
(PLEASE NOTE THEY HAD NOT EVEN FILED AN APPEARANCE IN
YOUR COURT WITH A COPY TO ME). [EXHIBIT "C"]

## THE EEO PROCESS IS AN ESSENTIAL PART OF THE CIVIL RIGHTS ACTS AND IS A PREREQUISITE FOR FILING A COMPLAINT IN A FEDERAL COURT

I have tried to obtain a lawyer to represent me. I have met a few times
with attorney John Parnell. He, like many attorneys said he would have
to research Title VII cases and he could not represent me on a contingency
basis. The hourly rates would be prohibitive. I am making inquiries of the
Attorneys on the EEOC referral list but still have not yet been successful.

A scholarly study of the American With Disabilities Act, funded by the
National Institute of Mental Health. [Exhibit D] The Article presents
exhaustive empirical investigation of the implementation of the ADA by the
EEOC and the local Fair Employment Practices Agencies, with whom a
complaint must be made as a pre-requisite for any further litigation. An
examination of their work and the outcomes of the complaints filed is a key
indicator of whether the legal system is keeping the promise Congress made
when it passed the ADA. *Moreover, because the EEOC also administers
other basic federal anti-discrimination statutes including Title VII of the
Civil Rights Act of 1964, the study's "findings shed important light on the
entire enterprise of the enforcement of federal employment discrimination
efforts. [from same article as above.].*

The study found, first, that Congress has never given the "EEOC the
resources the agency needed to ensure an appropriate investigation of each
case brought before it." [same article] Consequently, the EEOC has always
struggled with more cases than it could properly handle. When I made my
EEO Complaint on December 4, 2008, it was not investigated and decided
(Dismissed) until September 16, 2009 (the investigation took more than nine
months).

Now, this gave me a feeling that the investigation was a sham. No one was interviewed, witnesses were not contacted, and nothing was done. I did not even receive a copy of GM/BASHEN's Position Statement until Bashen's current motion was delivered to me.

It's true that with my EEOC case dismissed, I received a Right To Sue Letter, so that I could file a lawsuit. But, as I mentioned earlier, filing a lawsuit without an attorney is very difficult. Actually taking the case to a jury without an attorney is nothing but futile.

I told my intake worker at EEOC that I would agree to Mediation or Alternative Dispute Resolution but he said both sides would have to agree. General Motors obviously did not agree. I heard no more about it. I gave plenty of documentation: names, dates, actions taken, witnesses, articles submitted in Medical Seminars in which I mentioned the benefits Of the fundamental principals or concepts of the Vedic literature of India and its superiority over the conventional bio-medical and modern scientific concepts.

## WHAT WENT WRONG IN THE INVESTIGATION OF MY CASE AND WHAT WAS NOT BUT SHOULD HAVE BEEN TOLD TO ME

I knew from the beginning that charging General Motors would not be easy. I knew they had plenty of problems economically. But I did not think they should get away with their discrimination, particularly the religious discrimination against me.

I DID NOT KNOW UNTIL BASHEN FILED ITS MOTION AND I READ THE DECLARATION OF GEORGE STEVEN BASHEN THAT AFTER I FILED MY EEO COMPLAINT, "BASHEN WAS RETAINED BY GM TO REPRESENT ITS INTERESTS DURING THE PENDENCY OF THAT CHARGE." [Defendant's Exhibit 2, Paragraph 3]

But then I did more research on the internet into the BASHEN CORPORATION and I found that according to BASHEN'S CORPORATE HISTORY, GM became BASHEN'S client in 2000 about ten years ago. [Exhibit E] BASHEN has, in fact, been representing General Motors interests for the past ten years. I had worked for GM as a contract physician for 11 years not the two years stated in BASHEN'S Position Statement.

So what types of services did BASHEN offer to its Fortune 500 clients in EEO cases?  How did BASHEN represent GM's interests for the past ten years?  By using its considerable influence to see that the EEO System would not work…that the number of claims would be reduced and the number of civil rights lawsuits would be curtailed.  How do we know this?  We know it from BASHEN's own documents.

**BASHEN's** pro-employer bias is evident from the rest of its writing [Exhibit F]

"Bashen's EEO Compliance Administration services include investigations, training, affirmative action plans, diversity strategies alternative dispute resolution risk management and EEO and HR consulting services"…for corporations, not for those claiming discrimination. **"Hundreds of clients, including General Motors and other former Fortune 500 companies, non-profits, federal agencies, educational institutions, and insurance carriers, benefit from Bashen's expertise.  Some of these benefits include:**

- **The rapid identification of potential EEO risks**
- **ELIMINATION OR MITIGTION OF THE IDENTIFIED EEO RISKS**
- **REDUCING THE NUMBER OF CLAIMS FILED ANNUALLY**
- **CONDUCTING PROMPT AND COMPREHENSIVE INVESTIGATIONS**
- **REDUCING THE TIME NECESSARY TO CONDUCT INVESTIGATIONS**
- **TIMELY PREPARATION AND SUBMISSION OF PERSUASIVE POSITION STATEMENTS**
- **PROMPTLY RESPONDING TO ALL REGULATORY AGENCIES' REQUESTS FOR INFORMATION, INTERROGATORIES OR REQUESTS FOR PRODUCTION**
- **GARNERING SUBSTANTIALLY MORE CHARGE DISMISSALS**
- **IMPROVED RELATIONSHIPS WITH AGENCY INVESTIGATORS**

- **DEBUNKING THE BELIEF THAT EVERY CLAIM FILED WILL RESULT IN A SETTLEMENT/CONCILLIATION**
- **REDUCING THE NUMBER OF LAWSUITS FILED ANNUALLY**
- **GREATLY DECREASING THE LEGAL EXPENSES INCURRED TO LITIGATE DISCRIMINATION LAWSUITS**
- **PROTECTING DEFENSE COUNSEL FROM BECOMING FACT WITNESSES**
- **SPENDING APPRECIABLY LESS MONEY ON THE ENTIRE EEO CLAIMS PROCESS WHILE ENJOYING BETTER SERVICE AND RESULTS**

[Exhibit F]

This is a long term, systematic plan to ensure companies will have minimal Problems prevailing in EEO claims against them. General Motors not only Out sourced its manufacturing, now it saw the wisdom of out sourcing its entire EEO responsibility. And, who better to select for this than the prime company who the EEOC and federal agencies outsourced their EEO responsibilities to: the BASHEN COPORATION.

## BASHEN'S INVOLVEMENT WITH THE EEOC AND FEDERAL AGENCIES

I learned that BASHEN does substantial work for the U.S. Government, for its agencies during the EEO process like writing Final Agency Decisions and even for the EEOC. This combination of the EEOC, the BASHEN Corporation and GENERAL MOTORS involved in my claim while each has long established contractual, monetary arrangements gives not only the appearance of impropriety but of a well thought out and planned course of action that would stop my case at the earliest level.

The founder of BASHEN said **"Impartial investigations are more readily obtained by a third party who does not have personal or a professional**

**relationship with the complainant, witnesses, and the accused." [Exhibit K, Page 2, Second Paragraph from bottom]** Here, BASHEN'S FOUNDER DID NOT FOLLOW HER OWN PRINCIPALS AND WORDS. BASHEN DID BUSINESS WITH THE EEOC AND GOVERNMENT AGENCIES AND WITH GENERAL MOTORS AND BOTH WERE INVOLVED IN THIS CASE WITH ME.

The EEO itself and government agencies did a substantial amount of work Outsourcing its duties and ensuring the number of EEO claims by federal employees would be minimized. [EXHIBITS G, H, I, J, K and L]  General Motors outsourced its EEO obligations to BASHEN also with the intent of minimizing the effectiveness of EEO Claims.

The founder of BASHEN also said: **"Further, a third party does not have a vested interest in a favorable outcome and is often perceived as detached and neutral by the employee." [Exhibit K, Page 2, Second Paragraph from bottom]** Once again, Bashen, General Motors and the EEOC all had a vested interest...a financial interest in the outcome of my case.

<u>**BASHEN CORPORATION'S**</u>
<u>**TIES TO THE FEDERAL GOVERNMENT**</u>
<u>**AND TO THE E.E.O.C ITSELF**</u>
<u>**GIVE IT TOO MUCH INFLUENCE ON THE**</u>
<u>**OUTCOME OF INDIVIDUAL EEO CASES LIKE MINE**</u>

The BASHEN CORPORATION offers substantial assistance directly for Federal governmental agencies but also to the Equal Employment Opportunity Commission itself.

BASHEN CORPORATION documents obtained from its very own website made available to the public proudly proclaim that BASHEN is a "EEO SERVICE PROVIDER ..." [EXHIBIT " G "]  The Services and products offered by BASHEN in this document are:

- EEOC CLAIMS INVESTIGATIONS
- EMPLOYEE RELATIONS INVESTIGATIONS
- EEOC AND STATE AGENCY POSITION STATEMENTS AND

RESPONSES TO RFIs
- FEDERAL AGENCY REPORTS OF INVESTIGATION AND FINAL AGENCY DETERMINATIONS
- FEDERAL AGENCY ROIs, FADs, and Counseling

In another document titled "EEO COMPLIANCE ADMINISTRATIVE SERVICES", the symbiotic relationship between the EEOC, which investigated my claim and the BASHEN CORPORATION, is clear. [Exhibit F]

Bashen writes under the title 'ESTABLISHED AGENCY RELATIONSHIPS":
"
"BASHEN has investigated over 17,000 EEO claims, ranging from simple employee disputed to claims with class action implications.  No other firm can claim similar numbers or the knowledge ge\leaned from successfully managing so many diverse claims over a 15 year period.

[Exhibit F, top of page]

**"BASHEN POSSESSES A UNIQUE UNDERSTANDING OF THE ADMINISTRATIVE PROCESS AND HAS ESTABLISHED COOPERATIVE RELATIONSHIPS WITH THE EEOC AND OFCCP. THESE AGENCIES APPRECIATE BASHEN'S SPELCIALIZED EXPERTISE AND METICULOUS PROCESS MODEL."**

**[Emphasis Supplied] [Exhibit F, top of page]**

By BASHEN's own admission, Bashen has established cooperative relationships with the EEOC WHO I FILED MY DISCRIMINATION COMPLAINT WITH.  That fact alone raises the appearance of impropriety With BASHEN representing General Motors' interests in my case. As if that Were not enough, BASHEN admits that the EEOC (and OFCP) *"...appreciates Bashen's specialized expertise and meticulous process model.*

**In other words, whatever BASHEN says to EEOC, the EEOC will pay special attention to and give it great credence because of the close relationship, appreciation, respect and monetary arrangements EEOC has for anything that comes from BASHEN.**

BASHEN's involvement in my case rendered my participation in the
EEOC process moot.  Unknown to me, the outcome of my complaint
Was a foregone conclusion: not enough evidence to corroborate
violation of the discrimination statutes.

### THE FACT THAT I WAS NOT EMPLOYED BY THE BASHEN CORPORATION DOES NOT MEAN I HAVE NO CAUSE OF ACTION AGAINST THEM

Summary Judgment for BASHEN, at this stage is premature.  Let discovery
proceed.  Why not see what they actually did with GENERAL MOTORS in
my case?  Similarly, because of the non-disclosure of the significant
relationship between the EEOC AND THE BASHEN CORPORATION as
well as the significant relationship between THE BASHEN
CORPORATION and GENERAL MOTORS, I SUBMIT THAT I COULD
MAKE OUT A CASE OF CONSPIRACY TO DEPRIVE ME OF MY
CIVIL RIGHTS AND A CASE FOR RETALIATION BY BOTH
GENERAL MOTORS AND THE BASHEN CORPORATION.

YOUR HONOR, I SIMPLY SEEK JUSTICE.  I BELIEVE IT IS MY
DUTY TO STAND UP FOR MY RIGHTS WHEN THEY ARE BEING
TAKEN AWAY FROM ME.  I OWE THIS TO MYSELF, MY WIFE AND
MY CHILDREN.

I TRUST YOU AND THE LEGAL SYSTEM.  I AM NOT A LAWYER.
BUT I BELIEVE THAT WHAT WAS DONE IN THIS CASE WAS VERY
WRONG AND SOMEONE SHOULD BE HELD ACCOUNTABLE.

WHEREFORE, I ASK THE COURT TO DENY THE BASHEN
CORPORATIONS'S MOTIONS TO DISMISS, IF IT IS GRANTED
I ASK THAT I NOT BE PENALIZED WITH ATTORNEY FEES OR
COSTS BECAUSE I BELIEVE MY ACTIONS HAVE BEEN
REASONABLE WITH BOTH BASHEN AND WITH GENERAL
MOTORS.

**I ASK THAT MY CASE PROCEED TO TRIAL AND THAT I BE
GIVEN PERMISSION TO AMEND MY COMPLAINT AGAINST
THE BASHEN CORPORATION.**

**I ASK THE COURT DO WHAT IT BELIEVES WHAT IS JUST AND
EQUITABLE UNDER THE FACTS OF THIS CASE.**

Respectfully submitted,

ATUL C. SHAH
Plaintiff In Pro Per

pJanuary 23, 2010

## PROOF OF SERVICE

On this the 23[th] day of February, I did furnish the attorney for Defendant
BASHEN CORPORATION a true and accurate copy of the above Response
And Brief to his Motions to Dismiss by mailing same to his office address as
Disclosed in the pleadings, by ordinary mail, postage fully prepaid.

Respectfully submitted,

ATUL C. SHAH
Plaintiff In Pro Per

January 23, 2010

14

Exhibit A

STATE OF MICHIGAN

DEPARTMENT OF CIVIL RIGHTS

CADILLAC PLACE. SUITE 3-600
3054 WEST GRAND BOULEVARD
DETROIT. MI. 48202

THIS NOTIFICATION IS ISSUED UNDER THE
AUTHORITY OF ACTS 220 & 453. PA OF 1976 AS
AMENDED

## NOTICE OF DISPOSITION AND ORDER OF DISMISSAL

| EEOC #: 471-2009-00726C | MDCR #: 396353 |
|---|---|

| Claimant: | Respondent: |
|---|---|
| Atul C. Shah<br>2884 Manorwood Drive<br>Troy, MI 48085 | General Motors Corporation<br>c/o Bashen Corporation<br>1616 South Voss, Suite 300<br>Houston, TX 77057 |

RECEIVED
SEP 2 1 2009

**REASON FOR DISMISSAL:**

This complaint, jointly filed with the United States Equal Employment Opportunity Commission (EEOC) and the Michigan Department of Civil Rights, alleges the respondent discriminated against the claimant in violation of the Elliott-Larsen Civil Rights Act and/or the Persons with Disabilities Civil Rights Act.

The EEOC assumed jurisdiction to investigate this jointly filed complaint and has closed its case. The MDCR has accepted the finding of the EEOC.

It is therefore ordered that this complaint be dismissed.

| Date Dismissed : September 15, 2009 | Date Mailed : September 15, 2009 |
|---|---|
| /s/ Lori Vinson/ Director. Civil Rights Operations | |

### RULES OF CIVIL RIGHTS COMMISSION AND DEPARTMENT RELATING TO RECONSIDERATION AND APPEAL

*Rule 7 (1)* A claimant may request of the department a reconsideration of its refusal to issue a charge. The request shall be in writing, state specifically, the grounds upon which it is based, and be filed within 30 days after the date of mailing of the notice of disposition of which reconsideration is requested. It shall be filed at any office of the department by personal delivery or by mail.

*(2)* The department may authorize a hearing on the request for reconsideration at such time and place, and before such hearing commissioner or commissioners or hearing referee or referees as it or the director may determine. and notice thereof shall be given to all parties to the proceedings.

*Rule 18.* Any party claiming to be aggrieved by a final order of the commission or the department, including without limitation a refusal to issue a charge. may appeal to the circuit court of the State of Michigan having jurisdiction provided by law within 30 days of the date of service of an appealable order.

CR482-OD (Rev 10-04)

Exhibit-B

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ATUL C. SHAH,

     Plaintiff,

                            Case No. 2:09-cv-14038

vs.

                            HON. MARIANNE BATANNI

THE GENERAL MOTORS
COMPANY, et al.,

     Defendant.

_____/

## PLAINTIFF'S RESPONSE TO
## SHOW CAUSE ORDER

Plaintiff responds to the Show Cause Order to Dismiss for Lack Of

Progress/Lack of Service as follows:

1.  On June 11, 2008, I was discriminated against by General Motors when I was wrongfully terminated from my job as a Contract Medical Physician for General Motors because of my religion, race, nationality, age, and gender and retaliation for having filed a previous EEO Complaint which I later withdrew.

2.  I spoke with my son (who is highly educated), friends and colleagues about my situation and learned that I should contact the Equal Employment Opportunity Commission and discuss my options with them.

3.  I set up an appointment for December 4, 2009, and, at that appointment, I was formally interviewed by an intake worker, explained the EEOC process, informed of my rights, and was told that the matter would be thoroughly investigated by the EEOC. I provided extensive, detailed documentation of events, dates, times, individuals involved and witnesses.

4.   I requested a list of attorneys by the EEOC who specialize in these types of cases, including Sue Gordon and others whom I contacted.

5.   A friend recommended  Attorney John Parnell, whom I met at his office in St. Clair Shores in Macomb County.  He stated that he would investigate the facts of my case and determine if it was meritorious and if he would review the statutes and requirements, and let me know if he could handle my case.  Then we would discuss his retainer and likely cost of pursuing this. He advised to continue the EEOC Complaint while he looked into the matter.

6.   Because Mr. Parnell did not specialize in this type of lawsuit, he said he would have to put in a lot of work just to learn the nuances of pursuing the case and suggested I get an attorney who actually specialized in this area. I am still contacting attorneys on the referral list to represent me but They want an hourly agreement which I am not able to afford.  I have a Learned of a few attorneys who may do the case on a "contingency" agreement.

 7. EEOC, after several months ostensibly investigating the case, notified me that my EEOC complaint was being dismissed because its investigation could not substantiate the discrimination.  All that was done, was contact GM and they said they did not discriminate.

8.  EEOC informed me of what I could do to pursue my case, and told me That before I file a lawsuit, I must have a Right To Sue Letter, which I requested and they issued for me.

9.  Without the benefit of an attorney, I did file my Complaint with this Court not long after I received my Right To Sue Letter. I paid the filing Fee and was told that I was all set.

10.   I looked up the information on serving the Defendants and discovered I could not do so without a Summons for each Defendant.

11.   I called the Clerk of the Court who verified this and said that I could get the Summons on line but would have to have them signed by the Clerk for them to be effective.

12.  **On December 23, 2009,  I went to the Clerk and she Issued me my Two Summonses for the Defendants.**

13.  **BOTH DEFENDANTS HAVE IN FACT BEEN SERVED.**

14.  **I served the GENERAL MOTORS COMPANY a/k/a LIQUIDATED MOTORS COMPANY, formerly known as the GENERAL MOTORS CORPORATION via their resident agent THE CORPORATION BUREAU, IN FRANKLIN, MICHIGAN BY CERTIFIED MAIL FROM THE  WARREN POST OFFICE ON DECEMBER 31, 2009 at 3:04 p.m. [EXHIBIT "A"; on line Postal Service confirmation of delivery of certified mail.]**

15.  **My Summons and Complaint were delivered and accepted by the Corporation Bureau for GENERAL MOTORS on January 4th, 2009 at 10:27 a.m. [See Exhibit "A"].**

16.  **I served the served the BASHEN CORPORATION on the same date and from the same Post Office in Warren, Michigan, I served GENERAL MOTORS, December 31, 2009, at 3:15 p.m. by mailing the Summons and Complaint, by Certified Mail to their principal office in Houston, Texas.  [See Exhibit "C"]** B = B-1

17.  **On January 5th, 2010, at 2:15, my Summons and Complaint were delivered and received by the BASHEN CORPORATION.**

18.  **On January 11th, 2009, I received a letter from attorneys for General Motors Company, informing me that General Motors was in the Bankruptcy Court in New York State and therefore I was precluded from proceeding in any lawsuit in this Court or any other Court against General Motors and was instead left to the jurisdiction of the U.S. Bankruptcy Court in New York.  [Exhibit "D"].**

19.  I have since receiving the letter, had verbal, faxed, and mail communication with the Attorneys for General Motors, and having Read the statutes cited for the automatic stay and being assured by Attorney Briana N. Benfield, of  WEIL, GOTSHAL & MANGES, LLP, attorneys for General Motors that I would be listed on the bankruptcy MATRIX for General Motors, and I would have my case heard in the Bankruptcy Court

Through established arbitration proceedings, I am persuaded that they are Correct and my case against should be dismissed due to the Automatic Stay Provisions applicable to GENERAL MOTORS as a debtor in current bankruptcy proceedings. I told her that I would get the case dismissed but I would need more than five days to do so. She also agreed that she was only interested in my claims against GENERAL MOTORS being dismissed and Her request had nothing to do with BASHEN CORPORATION which is not an affiliate of any kind with GENERAL MOTORS.

20. On January 22nd, 2010, I received a Fax Transmission from Attorney Briana Benfield in which she has confirmed to me that I am now on the GENERAL MOTOTS Bankruptcy Matrix as a Creditor…along with other Information about the arbitration proceedings that will be available to me In the Bankruptcy Court. **[Exhibit "E"].**

21. The BASHEN CORPORATION is a Defendant totally distinct from General Motors and is not involved in bankruptcy proceedings.

22. Confusion came as to the identity and nature of the BASHEN CORPORATION, when, in the EEOC Disposition of my case, they listed GENERAL MOTORS CORPORATION as the Respondent, in care of THE BASHEN CORPORATION.

23. This led me to believe that BASHEN CORPORATION was affiliated with GENERAL MOTORS, which I had alleged in my Complaint.

24. I searched on the internet for the BASHEN CORPORATION and they Were not listed as a Michigan Corporation or a Corporation doing business In Michigan.

25. I searched with the State Bureau in Texas and learned that they were not listed as a Corporation doing business in Texas.

26. I searched for the BASHEN TEXAS located at the Texas address provided on the Disposition sheet from EEOC and learned that they sub Contract to do investigations for the EEOC.

23. **On January 22nd, 2010, I received a letter from attorneys for the BASHEN CORPORATION, Law Offices of Lipson, Nelson, Cole,**

**Seltzer, Garin, P.C., stating they had been retained by BASHEN CORPORATION to represent them in my case against them in your court. [Exhibit "F"].**

27. I have also attached my Summons Return for each of the Defendants.

**28. YOUR HONOR, I HAVE NOT ONLY PROOF THAT THE DEFENDANTS HAVE BEEN TIMELY SERVED BUT THAT I HAVE BEEN CONTACTED BY ATTORNEYS RETAINED BY THEM TO REPRESENT THEM IN THIS CASE.**

**29. I agree to voluntarily dismiss the case against GENERAL MOTORS Due to their Bankruptcy, their Automatic Stay Provisions, and the fact that they have kept their word to me to List me on the bankruptcy schedules (which they now have) and to permit me to pursue my claim in the Bankruptcy Court, which they have shown me they are doing. Please take into account all the work done on this case and Order a Voluntary Dismissal of my Claims on those grounds rather than the grounds of Lack Of Progress/Failure To Serve. This means a lot to me.**

30. This Court still has jurisdiction over the Bashen Corporation which is a Texas Corporation, employed as an independent contractor by the Equal Employment Opportunity Commission as an investigator for Civil Rights Complaints.

31. The Bashen Corporation failed to conduct any investigation into my case and therefore I was again deprived of due process of law by this Defendant again because of my race and my religion. My EEO Complaint was dismissed summarily because this "investigator" decided, without investigating the case, that it had no merit.

32. I ask that I be provided to amend my complaint against BASHEN CORPORATION to add other claims, if necessary.

**WHEREFORE, I PRAY THAT THIS HONORABLE COURT WILL NOT DISMISS MY CASE BECAUSE OF LACK OF PROGRESS/ FAILURE TO SERVE, BUT RATHER THAT YOU WILL GRANT MY REQUEST FOR VOLUNTARY DISMISSAL OF ALL MY CLAIMS**

**AGAINST GENERAL MOTORS COMPANY, formerly known as the LIQUIDATED MOTORS CORPORATION formerly known as GENERAL MOTORS CORPORATION ONLY, due to the Bankruptcy Proceedings In Which Debtor is engaged, specifically, and the Automatic Stay Provisions of the U.S. Bankruptcy Code.**

**AND FURTHER THAT YOU PERMIT ME TO CONTINUE MY CLAIMS AGAINST BASHEN CORPORATION BECAUSE THEY HAVE IN FACT BEEN SERVED AND, WHILE THEIR ATTORNEYS HAVE NOT FILED AN APPEARANCE WITH THE COURT, THEY HAVE RESPONDED TO ME IN WRITING STATING THAT THEY HAVE BEEN RETAINED TO REPRESENT BASHEN CORPORATION IN THIS MATTER.**

Respectfully submitted,

Atul C. Shah, Plaintiff

January 23, 2010

## PROOF OF SERVICE

On this the 25th day of January, 2010, I did furnish a true and accurate copy Of the above Plaintiff's Response To Show Cause Order, by mailing same to The respective attorneys who have contacted me as representing these defendants in writing sent to their respective office addresses, postage fully prepaid, by ordinary mail.

Respectfully submitted,

Atul C. Shah, Plaintiff

January 23, 2010

Exhibit-A

 **UNITED STATES POSTAL SERVICE**

Home | Help |
Sign In

Track & Confirm        FAQs

## Track & Confirm

Label/Receipt Number: **7009 1410 0000 6168 7684**
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
Status: **Delivered**

Your item was delivered at 10:27 AM on January 4, 2010 in FRANKLIN, MI 48025.

Detailed Results:
- Delivered, January 04, 2010, 10:27 am, FRANKLIN, MI 48025
- Arrival at Unit, January 04, 2010, 7:02 am, SOUTHFIELD, MI 48037
- Acceptance, December 31, 2009, 3:04 pm, WARREN, MI 48090

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.

Track & Confirm

Enter Label/Receipt Number.

Exhibit – B

 **UNITED STATES POSTAL SERVICE**.

Home | Help |
Sign In

Track & Confirm          FAQs

# Track & Confirm

**Label/Receipt Number: 7009 1410 0000 6168 7707**
Class: **First-Class Mail®**
Service(s): **Certified Mail™**
Status: **Delivered**

Your item was delivered at 2:15 PM on January 5, 2010 in HOUSTON,
TX 77057

Detailed Results:
• **Delivered, January 05, 2010, 2:15 pm, HOUSTON, TX 77057**
• **Acceptance, December 31, 2009, 3:05 pm, WARREN, MI 48090**

Notification Options

**Track & Confirm by email**
Get current event information or updates for your item sent to you or others by email.

Track & Confirm

Enter Label/Receipt Number.

http://trkcnfrm1.smi.usps.com/PTSInternetWeb/InterLabelInquiry.do

1/21/2010

Exhibit B-1



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $1.22 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ |

Postmark Here   DEC 31 2009   06090

Sent To c/o Bashen Corporation
Street, Apt. No.; or PO Box No. 1616 South Voss, Ste 300
City, State, ZIP+4 Houston, Texas 77057

General Motors 12/31/2009 N y

PS Form 3800, August 2006   See Reverse for Instructions

7009 1410 0000 9259 7022

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $1.22 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $4.02 |

DEC 31 2009   Postmark Here   0090   03   USPS   MI 48090   12/31/2009

Sent To General Motors Company
c/o Corporation Company
Street, Apt. No.; or PO Box No. 30600 Telegraph Rd, Ste 2345
City, State, ZIP+4 Bingham Farm, MI 48025

PS Form 3800, August 2006   See Reverse for Instructions

7009 1410 0000 9259 7029

Exhibit D

# WEIL, GOTSHAL & MANGES LLP

1300 I STREET, N.W.
SUITE 900
WASHINGTON, D.C. 20005
(202) 682-7000
FAX: (202) 857-0940

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW

DIRECT LINE
202-682-7206
brianna.benfield@weil.com

January 7, 2010

**BY FEDEX**

Atul C. Shah
2884 Manorwood Drive
Troy, MI 48085

      **Re:**   **Atul C. Shah v. General Motors Company and Bashen Corporation**

Dear Mr. Shah:

      I write to inform you that on June 1, 2009, (the "Commencement Date"), Motors Liquidation Company (f/k/a General Motors Corporation) ("MLC") and certain of its subsidiaries filed voluntary petitions seeking bankruptcy protection under chapter 11 of title 11 of the United States Code (the "U.S. Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The chapter 11 cases have been consolidated for procedural purposes and bear case no. 09-50026 (REG). Enclosed herewith is a copy of MLC's chapter 11 petition.

      Your attention is directed to section 362(a) of the U.S. Bankruptcy Code, entitled "Automatic Stay." Pursuant to section 362(a) of the U.S. Bankruptcy Code, an automatic stay went into effect on the Commencement Date, prohibiting the commencement or continuation of any actions or proceedings against the Debtors. The automatic stay expressly prohibits the following:

      the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding

EIL, GOTSHAL & MANGES LLP

Atul C. Shah
January 7, 2010
Page 2

against the debtor that was or could have been commenced before the
commencement of the case under [the Bankruptcy Code.]

11 U.S.C. § 362(a)(1).

Accordingly, the above-captioned action was filed in violation of the
automatic stay.  All actions taken in violation of the automatic stay are void and, pursuant
to established case law, parties may be held in contempt of court for violating the
automatic stay.  See, e.g., Bartel v. Eastern Airlines, 133 F.3d 908 (2d cir. 1998); Fidelity
Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47 (2d cir. 1976), cert. denied,
429 U.S. 1093 (1977).  In light of the foregoing, Motors Liquidation Company requests
that you withdraw the complaint filed against it and confirm that you have done so within
five business days.  Motors Liquidation Company reserves all rights and remedies.

If you have any questions with respect to the foregoing, please do not

Very truly yours,

Brianna N. Benfield

Enc.

*Exhibit 12*

# WEIL, GOTSHAL & MANGES LLP

# FAX COVER PAGE

1300 I Street, N.W., Suite 900, Washington, DC 20005

Main Phone: (202) 682-7000
Main Fax: (202) 857-0940
Second Fax: (202) 857-0939

**TOTAL PAGES:** 9
(Including this page)

**DATE:** January 22, 2010

**PLEASE SEND:**
☐ IMMEDIATELY  ☒ ASAP
**SENDER'S DIRECT DIAL:**
202-682-7206

**FROM:** Brianna Benfield     **EMAIL:** brianna.benfield@weil.com

| PLEASE DELIVER TO: | FAX NUMBER: | PHONE NUMBER: |
|---|---|---|
| 1. Atul Shah | 586-731-7209 | |

**COMMENTS:**

Re: Motors Liquidation Company (f/k/a General Motors Corporation)

Dr. Shah:

As requested in your letter dated January 15, 2010, enclosed is a copy of the page on which you are listed in Motors Liquidation Company's creditor matrix. Also attached is the affidavit of service indicating that you were served with the Notice of Bar Dates for Filing of Proofs of Claim and a Proof of Claim form in September 2009.

If you do not receive legible copies of all pages, please contact the Telecopy Department at (202) 682-7087 or the Sender.

**ATTY. NO.:** 5560   **CLIENT/MATTER NO.:** ▓▓▓▓▓   **ROOM NO.:**   **PREPARED BY:** Carolyn

**TRANSMITTED BY:** _____   **DATE:** _____   **COMPLETED TIME:** _____   ☐ AM  ☐ PM

**RECEIVED**

This facsimile message is intended only for use of the individual or entity name above, and may contain confidential and/or legally privileged information. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the postal service. Thank You.

**REFERENCE #**
_____
**TO**
_____

| Name | Address1 | Address2 | Address3 | Address4 | City | State | Zip |
|------|----------|----------|----------|----------|------|-------|-----|
| SHAFT, HENRY L | 211 N HARRISON ST | | | | SAGINAW | MI | 48602-4230 |
| SHAFT, ARTHUR ALBERT | 3315 SICOIVY DR | | | | SAGINAW | MI | 48601-7054 |
| SHAFT, CLAIRE L | 1341 FREMONT ST | | | | FLINT | MI | 48504-4508 |
| SHAFT, GEORGIA A | 12490 RUPPERT RD | | | | PERRY | MI | 48872-8527 |
| SHAFT, JAMES R | 733 N SHELDON ST | | | | CHARLOTTE | MI | 48813-1230 |
| SHAFT, NANCY | 5845 SWAN CREEK RD | | | | SAGINAW | MI | 48609-9705 |
| SHAFT, TERI L | PO BOX 705 | | | | PERRY | MI | 48872-7027 |
| SHAFT,C THOMAS A | 5985 W US HIGHWAY 223 | | | | ADRIAN | MI | 48221-9781 |
| SHAFT,C MARILYN | 1481 STEPHEY ST | | | | PERRY | MI | 48872-1781 |
| SHAFT,C STEVE D | 822 BUENA VISTA WAY | | | | ADRIAN | MI | 49221-9705 |
| SHAFTMAN FRED | 10 HIGHLAND VALLEY CT HW | | | | NILES | MI | 49120-8033 |
| SHAITO, DOUGLAS A | PO BOX 245 | | | | NEW CASTLE | PA | 16105-1201 |
| SHAITO, LINDA M | 55171 PARK PL | | | | ATLANTA | GA | 30337-4880 |
| SHAITO, ROBERT C | 938 BEACHWAY DR | | | | LUTHER | MI | 49656-0245 |
| SHAITO, JEFFREY C | 55171 PARK PL | | | | NEW HUDSON | MI | 48165-9709 |
| SHAGENA, CLAYTON R | 5778 WILDCAT RD | | | | WHITE LAKE | MI | 48383-2904 |
| SHAGENA, DONALD R | 272 LINCOLN ST | | | | NEW HUDSON | MI | 48165-9709 |
| SHAGENA, DONALD S | 2607 SPELLMAN RD | | | | CLYDE | MI | 48049-1315 |
| SHAGENA, HAROLD P | 7244 SCHOOLCRAFT DR | | | | OXFORD | MI | 48371-3623 |
| SHAGENA, JACK R | 1701 BAY RD | | | | LADRUM | MI | 49221-9224 |
| SHAGENA, JEFFREY M | 3011 KONEIER RD | | | | DAVISON | MI | 48423-2395 |
| SHAGENA, JEFFREY MICHAEL | 3011 KONEIER RD | | | | OXFORD | MI | 48371-2754 |
| SHAGENA, KYLIE C | 5778 WILDCAT RD | | | | BALTIMORE | MD | 21223-5106 |
| SHAGENA, LEE C | 25527 WOODFORD AVE | | | | BALTIMORE | MD | 21222-5106 |
| SHAGENA, RENAEL | 62 W MANOR ST | | | | ADRIAN | MI | 49221 |
| SHAGENA, VERACHJ | 74 E MANOR ST | | | | WARREN | MI | 48091-6011 |
| SHAGOTTI, ROBERT P | 6332 PATCHIN RD | | | | OXFORD | MI | 48371-4507 |
| SHAK, | 44105 15TH ST W STE 207 | SUITE 1800 | | | BOSTON | NY | 48371-4508 |
| SHAK ALLIANCE GROUP LLC | 13335 SAGINAW ST | | | | LANCASTER | CA | 24075-5065 |
| SHAK ALLIANCE GROUP LLC | 6900 BRUNSWICK DR | | | | FLINT | MI | 93534-4090 |
| SHAK ALLIANCE GROUP LLC | 6900 BRUNSWICK DR | 6900 BRUNSWICK DR | | | HIGHLAND PARK | MI | 48507 |
| SHAK ALLIANCE GROUP LLC | ELMER JAFFEE | ELMER JAFFEE | | | TROY | MI | 48200 |
| SHAK FULL CAMD | REVOLUTIONARY SYSTEMS | | | | TROY | MI | 48085-1271 |
| SHAK DASANY | 2884 MANDRAWOOD DR | 50 CRAIGWOOD RD STE 302 | | | CLEVELAND | OH | 48085-1271 |
| SHAK JAYSHREE | 2884 AMITA AVE | | | | SOUTH PLAINFIELD | NJ | 44157 |
| SHAK JAYSHREE | SHAK, JAYSHREE | | | | TROY | MI | 07080-2414 |
| SHAK MID | 14235 35TH ST W STE 110 | LAW OFFICES OF STUART M FELDHEIM, PC | | | FRANKLIN PARK | IL | 48095-1145 |
| SHAK PARESH | 254 HENDRICKSON DR | | | | FARMINGTON HILLS | MI | 60531-2029 |
| SHAK SAMIR | C/O SABUCHI ANSAL | 18800 NORTHWESTERN HIGHWAY SUITE 204 | | | LANCASTER | CA | 48334-3255 |
| SHAK BHAVESH | 2330 GOLFVIEW DR APT 205 | | | | PRINCETON JUNCTION | NJ | 93534-5500 |
| SHAK, BHUPENDRA | 2400 EDMUINTON DR | PO BOX 2000 | | | WEST LAFAYETTE | IN | 09550-1704 |
| SHAK, BHUPENDRA V | 1678 GALAXY BLVD | | | | TROY | MI | 47956-2000 |
| SHAK, BHUPENDRA V | 3400 EDMUINTON DR | | | | ROCHESTER HILLS | MI | 48094-3855 |
| SHAK, BRENDA | 14927 DROID VALLEY ON NE | | | | STERLING HEIGHTS | MI | 48064-2973 |
| SHAK, BRENDA | 2653 LENOX ROAD | BLD UNIT 206 | | | ROCHESTER HILLS | MI | 48314-1238 |
| SHAK, CHANDRAKANT B | 205 SAINT CLAIR DR APT 1 | | | | ATLANTA | MI | 48306-2073 |
| SHAK, CHIRAG V | 39909 LADRONE AVE | | | | ATLANTA | GA | 30329 |
| SHAK, CHONG-AE | 8860 RHODODENDRON CT | | | | YORKTOWN | GA | 30324 |
| SHAK, CHRIS | 4760 WALNUT CREEK CIR | | | | STERLING HEIGHTS | VA | 23698-4170 |
| SHAK, CYNTHIA A | 30059 COPPER LN | | | | LOXTON | VA | 48315-5569 |
| SHAK, DEEPAK G | 3755 RAVEN CIR | | | | WEST BLOOMFIELD | MI | 22015-5620 |
| SHAK, DHARMESH N | 1814 TAXWEI LN | | | | NOVI | MI | 48877-4537 |
| | | | | | DREMDS | MI | 48864-2813 |
| | | | | | AVON | IN | 46123-8059 |

*Exhibit-F*

JEFFREY T. NEILSON[1,4]
STEVEN R. COLE
PHILLIP E. SELTZER[1]
JOSEPH P. GARIN[1,2,4]
THOMAS G. COSTELLO
DAVID B. DEUTSCH
HOWARD A. LAX
JOSEPH A. STARR
STEVEN H. MALACH
KAREN A. SMYTH[5]
KAY RIVEST BUTLER
SCOTT D. STONER
C. THOMAS LUDDEN
STUART D. LOGAN
ALEX L. ALEXOPOULOS[7]
KIRSTEN E. GRAMZOW
STARR HEWITT KINCAID
SHAWN Y. GRINNEN
JASON M. SHINN
MARK E. PHILLIPS
SHANNON D. NORDSTROM[5]
SANDRA D. GLAZIER
DOUGLAS E. KELIN[2,8]
ANDY L. EDMONDSON[9]
JAMES B. FAIRBANKS[9]

1 ALSO ADMITTED IN NEVADA
2 ALSO ADMITTED IN ILLINOIS
3 ALSO ADMITTED IN NEW YORK
4 ALSO ADMITTED IN COLORADO
5 ADMITTED NEVADA & CALIFORNIA ONLY
6 ADMITTED IN NEVADA ONLY
7 ALSO ADMITTED IN OHIO
8 ALSO ADMITTED IN FLORIDA
9 ADMITTED NEVADA & WASHINGTON ONLY

LAW OFFICES

# Lipson | Neilson
## COLE, SELTZER, GARIN, P.C.
### *Attorneys and Counselors at Law*

3910 TELEGRAPH ROAD, SUITE 200
BLOOMFIELD HILLS, MICHIGAN 48302

TELEPHONE (248) 593-5000
TELEFAX (248) 593-5040
www.lipsonneilson.com

E-MAIL: Ala@lipsonneilson.com

January 19, 2010

BARRY J. LIPSON
(1955-2003)

OF COUNSEL

MICHAEL C. CURHAN
MICHAEL A. ROBBINS
ALBERT L. HOLTZ
BARRY L. HOWARD

GRAND RAPIDS, MICHIGAN

4808 BROADMOOR AVENUE SE
GRAND RAPIDS, NEVADA 49512
TELEPHONE (616) 575-9900

GROSSE POINTE FARMS, MICHIGAN

102 KERCHEVAL AVENUE
KERCHEVAL SUITES - SUITE 100
GROSSE POINTE FARMS, MICHIGAN 48236
TELEPHONE (313) 308-0003

LAS VEGAS, NEVADA

9580 WEST SAHARA AVE., SUITE 120
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 382-1500

Atul C. Shah
2884 Manorwood Drive
Troy, Michigan 48085

    Re:    Shah v General Motors Company, et al.
           Case No.  09-14038

Dear Mr. Shah:

    This law firm has been retained by Bashen Corporation to represent it in the above referenced lawsuit. This letter is sent to see whether you will voluntarily dismiss your claims against Bashen Corporation because your complaint fails to state a claim against Bashen Corporation, Bashen Corporation was not your employer and Bashen Corporation did not have any input whatsoever into General Motors Corporation's decision to terminate your contract employment on June 11, 2008. Please be advised that if we do not receive anything in writing from you by January 22, 2010 agreeing to dismiss your claims against Bashen Corporation, we will assume that you are not agreeing to voluntarily dismiss them and instead require us to file a motion with the Court.

    Should you have any questions or comments regarding this matter, please do not hesitate to call.

                    Very truly yours,

          LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.

                    Alex L. Alexopoulos

ALA/hsh

LAW OFFICES

# Lipson|Neilson
## COLE, SELTZER, GARIN, P.C.
### Attorneys and Counselors at Law

BARRY J. LIPSON
(1955-2003)

OF COUNSEL

MICHAEL C. CURHAN
MICHAEL A. ROBBINS
ALBERT L. HOLTZ
BARRY L. HOWARD

GRAND RAPIDS, MICHIGAN

4808 BROADMOOR AVENUE SE
GRAND RAPIDS, MICHIGAN 49512
TELEPHONE (616) 575-9900

GROSSE POINTE FARMS, MICHIGAN

102 KERCHEVAL AVENUE
KERCHEVAL SUITES - SUITE 100
GROSSE POINTE FARMS, MICHIGAN 48236
TELEPHONE (313) 308-0003

LAS VEGAS, NEVADA

9580 WEST SAHARA AVE., SUITE 120
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 382-1500

T. NEILSON[1,4]
STEVEN R. COLE
PHILLIP E. SELTZER[1]
JOSEPH P. GARIN[1,2,4]
THOMAS G. COSTELLO
DAVID B. DEUTSCH
HOWARD A. LAX
JOSEPH A. STARR
STEVEN H. MALACH
KAREN A. SMYTH[3]
KAY RIVEST BUTLER
SCOTT D. STONER
C. THOMAS LUDDEN
STUART D. LOGAN
ALEX L. ALEXOPOULOS[2]
KIRSTEN E. GRAMZOW
STARR HEWITT KINCAID
SHAWN Y. GRINNEN
JASON M. SHINN
MARK E. PHILLIPS
SHANNON D. NORDSTROM[3]
SANDRA D. GLAZIER
DOUGLAS E. KELIN[2,8]
ANDY L. EDMONDSON[6]
JAMES B. FAIRBANKS[9]

1 ALSO ADMITTED IN NEVADA
2 ALSO ADMITTED IN ILLINOIS
3 ALSO ADMITTED IN NEW YORK
4 ALSO ADMITTED IN COLORADO
5 ADMITTED NEVADA & CALIFORNIA ONLY
6 ADMITTED IN NEVADA ONLY
7 ALSO ADMITTED IN OHIO
8 ALSO ADMITTED IN FLORIDA
9 ADMITTED NEVADA & WASHINGTON ONLY

3910 TELEGRAPH ROAD, SUITE 200
BLOOMFIELD HILLS, MICHIGAN 48302

TELEPHONE (248) 593-5000
TELEFAX (248) 593-5040
www.lipsonneilson.com

E-MAIL:  Ala@lipsonneilson.com

January 19, 2010

Atul C. Shah
2884 Manorwood Drive
Troy, Michigan 48085

Re:  Shah v General Motors Company, et al.
     Case No.  09-14038

Dear Mr. Shah:

This law firm has been retained by Bashen Corporation to represent it in the above referenced lawsuit.  This letter is sent to see whether you will voluntarily dismiss your claims against Bashen Corporation because your complaint fails to state a claim against Bashen Corporation, Bashen Corporation was not your employer and Bashen Corporation did not have any input whatsoever into General Motors Corporation's decision to terminate your contract employment on June 11, 2008.  Please be advised that if we do not receive anything in writing from you by January 22, 2010 agreeing to dismiss your claims against Bashen Corporation, we will assume that you are not agreeing to voluntarily dismiss them and instead require us to file a motion with the Court.

Should you have any questions or comments regarding this matter, please do not hesitate to call.

Very truly yours,

LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.

Alex L. Alexopoulos

ALA/hsh

50 UKSLR 1
(Cite as: 50 U. Kan. L. Rev. 1)

c

University of **Kansas Law Review**
November, 2001

**Articles**

**\*1 UNFUNDED MANDATE:** AN EMPIRICAL STUDY OF THE IMPLEMENTATION OF THE
AMERICANS WITH DISABILITIES ACT BY THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Kathryn **Moss**, [FNa]
Scott Burris, [FNb]
Michael Ullman, [FNc]
Matthew Johnsen, [FNd]
Jeffrey Swanson, [FNe]

Copyright © 2001 **Kansas Law Review**, Inc.; Kathryn Moss, Scott Burris, Michael

Ullman, Matthew Johnsen, Jeffrey Swanson

I. Introduction

Upon its passage in 1990, the Americans with Disabilities Act (ADA) [FN1] was hailed as the most important civil rights law ever enacted for people with disabilities, and the most significant civil rights law since the Civil Rights Act of 1964. [FN2] Congress, finding that "individuals with \*2 disabilities . . . have been . . . subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society," proclaimed in the Act its ambitious intention to secure "equality of opportunity, full participation, independent living, and economic self-sufficiency" for individuals with disabilities. [FN3] In the ensuing decade, more than 250,000 employment discrimination complaints were filed under the ADA with the U.S. Equal Employment Opportunity Commission ("EEOC" or the "Commission") and state and local fair employment practices agencies (FEPAs). [FN4] This Article presents the findings of an exhaustive empirical investigation, funded by the National Institute of Mental Health, of the implementation of the ADA by the EEOC and the FEPAs. [FN5] Although not as well-covered in the press as ADA litigation, or as debated in the law reviews, these administrative agencies dispose of the vast majority of ADA employment discrimination cases, which must be filed with the agency as a precondition to \*3 any later court litigation. An examination of their work and the outcomes complainants receive is a key indicator of whether the legal system is keeping the promises Congress made when it passed the ADA. [FN6] Moreover, because the EEOC also administers other basic federal anti-discrimination statutes-- including Title VII of the Civil Rights Act of 1964, [FN7] the Age Discrimination in Employment Act, [FN8] the Equal Pay Act, [FN9] and section 501 of the Rehabilitation Act of 1973 [FN10]--our findings shed important light on the entire enterprise of the enforcement of federal employment discrimination legislation.

Our findings raise questions about how well the enterprise goes forward. Congress has never given the EEOC the resources the Agency needed to ensure an appropriate investigation of each case brought before it. As a consequence, the Agency has always struggled with more complaints than it could properly handle, while for most of its existence it has also tried to develop and maintain an effective program of en-forcement litigation. To be sure, charges that are not resolved by the EEOC may be carried forward into lawsuits, but early data from our current research on these suits indicate that only a small percentage of ADA claimants are willing or able to take advantage of this opportunity. Litigation is more expensive than the administrative process, and litigation virtually always requires the services of an

- 2004 **Crystal Award** Winner, presented by the National Association of Negro Women in Business and Professional Women's Clubs, Inc., for achievement in business.

## 2006

- 2006 LinkLine Patent awarded for its automated, web-based EEO compliance and case management technology.
- 2006 Ms. Bashen is interviewed by *The BusinessMakers* radio show.

## 2007

- 2007 Bashen Corporation releases its Federal sector suite, EEOFedSoft, now EEOFedLink.

## 2008

- 2008 DiversityBusiness.com's **Top 500 Diversity Owned Businesses in United States**

508 SITE

     

NMBC    TOP 2008 BUSINESS    NWBOC WBE CERTIFIED    Inc. 500    HMSDC    WBEA    Diversity ADVISORY

Exhibit - E

   

About **Bashen Corporation**

HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES          CONTACT US | CAREERS

**ABOUT BASHEN**

» **Mission Statement**

» **Founder**

» Corporate History and Accolades

» **Staff**

» **Community Service**
  **Professional & Civic Memberships**

# Corporate History

### 1994

* **September 1994 – Bashen Corporation founded**
* First work engagement with Flagstar Corporation, Denny's parent company, hired Bashen to investigate customer complaints of discrimination pursuant to a consent decree with the Justice Department
* Shoney's restaurant became a client

> *"Many of our first clients were in the restaurant industry."* – Janet Bashen

### 1995

* January – moved from home office to first commercial office space

### 1996

* Compaq Computer and Goodyear Tire become clients

### 1998

* Featured on CNN Financial Network

### 1999

* 1999 **Houston 100** Winner
* 1999 **Pinnacle Award** Finalist
* 1999 **Houston Small Business Award** Nominee
* 1999 **Houston Women's Business of the Year** by the Houston Women's Business Council Nominee

### 2000

* General Motors becomes a client
* 2000 **Houston 100** Winner
* 2000 **Emerging (E-10) Award** Winner

### 2001

* Filed Patent Application for LinkLine
* 2001 **Houston 100** Nominee
* 2001 Recognition of Excellence form Operation ReachBack, Inc.

### 2002

* Verzion becomes a client
* 2002 Inc. magazine's **Inc. 500** Winner, ranking as one of the nation's fastest-growing private companies, with an increase in sales of 552 percent.
* 2002 **Houston 100** Winner

### 2003

* 2003 **Pinnacle Award** Winner, presented by the Houston Citizens Chamber of Commerce for success in business

### 2004



HOME | CONTACT US | CAREERS | SITE MAP

*"Bashen was very sensitive to the potential ramifications to our organization's reputation. We needed the facts, good or bad, and Bashen delivered. I have no hesitation in highly recommending Bashen Corporation. If you wish to speak to me personally, please contact Bashen Corporation for my contact information."*

*Board Chair*
*Not-For-Profit Organization*

# Award Winning Services

HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES          CONTACT US | CAREERS

**SERVICES**

» Corporate EEO Compliance

» Federal Sector EEO Compliance

» EPLI Claims Administration

» Small Business

» Law Firm Investigative Services

## EEO Compliance Administration Services

### Established Agency Relationships

Bashen has investigated over 17,000 EEO claims, ranging from simple employee disputes to claims with class action implications. No other firm can claim similar numbers or the knowledge gleaned from successfully managing so many diverse claims over a 15-year period. Bashen possesses a unique understanding of the administrative process and has established cooperative relationships with the EEOC and OFCCP. These agencies appreciate Bashen's specialized expertise and meticulous process model.

The EEOC and OFCCP's Memoranda of Understanding require greater clarity regarding charge processing procedures to increase coordination and efficiency, and to minimize duplication in the agencies' overlapping EEO enforcement activities. With Bashen as the single provider for EEO and affirmative action products and services, employers are better equipped to interact positively with both agencies.

Bashen's EEO Compliance Administration services include investigations, training, affirmative action plans, diversity strategies, alternative dispute resolution, risk management and EEO and HR consulting services. Hundreds of clients, including Fortune 500 companies, non-profits, federal agencies, educational institutions, and insurance carriers, benefit from Bashen's expertise. Some of the benefits include:

- The rapid identification of potential EEO risks
- Elimination or mitigation of the identified EEO risks
- Implementation of sound preventative measures
- Having available reliable, experienced and knowledgeable full-time EEO consultants
- Continual education about legal obligations and the potential consequences when violations occur
- Reducing the number of claims filed annually
- Conducting prompt and comprehensive investigations
- Reducing the time necessary to conduct investigations
- Preparing detailed reports for review by local, regional or corporate leadership
- Having comprehensive analyses and sensible recommendations
- Timely preparation and submission of persuasive position statements
- Promptly responding to all regulatory agencies' Requests For Information, Interrogatories or Requests For Production
- Defusing potentially contentious situations
- Garnering substantially more charge dismissals
- Negotiating more reasonable settlements or conciliations, when indicated
- Having experienced representation at agency fact finding conferences, mediations or on-site investigations
- Improved relationships with agency investigators
- Freeing staff to work on delivering the principal products or services of the company
- Effectively managing the entire claims process in a virtual environment using LinkLine
- The ability to intake complaints from employees, vendors or visitors 24 hours a day
- Fostering a more harmonious and productive working environment
- Debunking the belief that every claim filed will result in a settlement/conciliation
- Reducing the number of lawsuits filed annually
- Greatly decreasing the legal expenses incurred to litigate discrimination lawsuits
- Protecting defense counsel from becoming fact witnesses
- Spending appreciably less money on the entire EEO claims process while enjoying better service and results

LEGAL POLICY | PRIVACY POLICY | ACCESSIBILITY POLICY | CAREERS | CONTACT US | SITE MAP

Copyright © 1994 - 2010 Bashen Corporation. All rights reserved.

508 SITE

NMBC    TOP 2008 BUSINESS    NWBOC WBE Certified    Inc. 50    HMSDC    WBEA    Diversity ADVISOR

Exhibit- G

HOME | CONTACT US | CAREERS | SITE MAP



HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES                    CONTACT US | CAREERS

# BASHEN CORPORATION,
## THE EEO COMPLIANCE SERVICE PROVIDER
## FOR *TIMES LIKE THESE*.

### Services and Products:

- LinkLine, a patented, web-based EEO claims management software
- EEOC Claims Investigations
- Employee Relations Investigations
- EEOC and State Agency Position Statements and Responses to RFIs
- Federal agency Reports of Investigation and Final Agency Determinations
- EEO Compliance and Diversity Training
- Affirmative Action Plan Preparation and Implementation
- Human Resources Consulting
- Policy Preparation
- Risk Management Consulting
- Employment Practices Liability Insurance Claims
- Federal Agency ROIs, FADs, and Counseling

### Client Benefits

- Experience
- Expertise
- Cost Effective
- Patented EEO Software
- Innovation
- Ethical
- Exceptional Business Acumen
- Diversity
- Dedication
- Objectivity
- Neutrality



LEGAL POLICY | PRIVACY POLICY | ACCESSIBILITY POLICY | CAREERS | CONTACT US | SITE MAP

Copyright © 1994 - 2010 Bashen Corporation. All rights reserved.

508 SITE

NMBC    TOP 2008 BUSINESS    NWBOC WBE CERTIFIED    Inc. 500    HMSDC    WBEA    Diversity ADVISORS

Exhibit-H



**BASHEN** CORPORATION

**15 YEARS**
**1994 - 2009**

HOME | CONTACT US | CAREERS | SITE MAP

*Training ... It's not all black & white.*

HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES          CONTACT US | CAREERS

**SERVICES**

» Federal Sector EEO Compliance

› Counseling

› Investigations

› ADR

› Final Agency Decisions (FAD)

Training

**GSA Schedule**

# Training

### Training Overview

Today's workforce is a complex mixture of individuals with different cultural, religious, economic and social perspectives. Traditional corporate philosophy stressed the synergy between profitability and productivity. Modern thought refined this understanding to underscore that productivity and profitability increase when employees feel valued and respected. Fair employment practices ("FEP") training is imperative to every employee's perception about his/her worth to an organization. Employees who feel valued and understand the differences between appropriate conduct and improper behavior are less likely to file EEO claims, and managers are better equipped to prevent or correct potential problems. Training also helps insulate employers from various liabilities associated with EEO claims.

### Philosophy and Methodology

There are four ways in which individuals learn: visually, audibly, analytically, and emotionally. However, no two people learn exactly the same way. Bashen recognizes that all learning styles must be addressed to ensure the success of all participants; therefore, we have created a novel training experience that blends several techniques to deliver key information. Bashen's interactive training courses utilize live oration, videos, role-playing, group projects, activity worksheets, with questions and answers to create a positive educational environment. Courses may also be delivered via the Internet, Intranet training or satellite broadcast. Bashen's web-based training incorporates state of the art e-learning and instructional designs using illustrative workplace documents, polling and interactivity. The result is a highly effective and convenient method of delivering engaging and customized e-learning.

### Training Courses

Bashen employs a variety of customizable training modules in all areas of EEO, including diversity, fair employment practices, anti-harassment and discrimination prevention, and conducting effective EEO investigations. Bashen facilitators work closely with the clients to craft a training program that is designed to meet an organization's specified goals and needs. Courses may be intensified or simplified, depending on the audience.

Bashen's training curricula are designed to help foster productive work environments that are free of discrimination and harassment. The training modules incorporate the latest cases and employment laws, and create both consensus and understanding among management and employees regarding appropriate workplace conduct to measurably improve the knowledge and interactions of employees at every level. Supervisors and managers gain the necessary awareness to avoid the potential perils associated with improper conduct. Our trainers are also EEO investigators, which greatly enhances their ability to impart pertinent knowledge about tolerance, inclusion, and fair employment practices.

### Sample Federal Sector EEO Courses

- "Generations Apart" A look at generational issues affecting the workplace - 2008
- Designing an EEO Business Initiative, "It's all in the Plan" - May 2007
- Equal Employment Opportunity Process Mapping - 2007
- Designing an EEO Business Initiative - Updated 2008
- "The Color of Diversity, Race Codes - Its all in the Mix"- 2007
- EEO Process Mapping, "A Narrow and Winding Road" – December 2006
- Fair Employment Practices - It Affects the Bottom Line! - 2006
- Equal Employment Opportunity - The Real Meaning 40 Years Later! - 2006
- The NO FEAR Act - The Reporting Process - 2005
- Solving the Affirmative Employment Maze - 2004
- Best Practices for Managing Diversity - 2002
- LinkLine, A Look at Technology and EEO - 2001
- Diversity Training for Employees - 2001
- Advanced EEO for Supervisors and Managers - 2000
- The Life Cycle of A Discrimination Complaint - 1999
  - "Chase to the Drive"
- The ABC's of EEO for Supervisors and Managers - 1998
  - "The building blocks start with managers."

Exhibit-I



 Schedule
Contract GS-02F-008 N

HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES                    CONTACT US | CAREERS

**SERVICES**

» **Federal Sector EEO Compliance**

> **Counseling**

> **Investigations**

> **ADR**

> **Final Agency Decisions (FAD)**

**Training**

GSA Schedule

# GSA Schedule

Click Here for Our GSA Advantage

Schedule 738X: Human Resources and Equal Employment Opportunity Services

## SIN 595-25 EEO Services

EEO Services may include but are not limited to Investigating Discrimination Complaints and Preparation Reports of Investigation (includes Individual Case/Consolidated Case-One or Additional Issues, Continuing Violation, On-Line Reporting System, Additional Copies of Investigation Reports), Final Agency Decision (FAD), Inquiry, Resolution Attempt, and Preparation of an Analysis and Recommended Final Agency Decisions (FAD) on Allegations of Noncompliance With Settlement Agreements or Final Decisions, Resolutions Attempt and Report of Inquiry Regarding Notices of Intent to sue under Age Discrimination in Employment Act of 1967, as Amended, Alternative Dispute Resolution, Reference Materials relating to Equal Opportunity Programs, EEO Training and Counseling (Individual and Class Complaint).

| | |
|---|---|
| **Contract Number:** | GS-02F-0087N |
| **Contract Period:** | 4/10/08 through 4/9/13 |
| **Contractor:** | **Corporate Headquarters**<br>Bashen Corporation<br>1616 South Voss Road Suite 300<br>Houston, Texas 77057<br>Toll Free: 713-780-8056<br>Fax: 713-780-8206<br><br>**Washington, D.C. Office**<br>Bashen Corporation<br>1806 New Hampshire Avenue, N.W.<br>Washington, D.C. 20009<br>Toll Free: 877-776-1862 |
| **Web Page:** | www.bashencorp.com |
| **Contact Administration:** | Janet Bashen, **President and CEO**<br>Humaira Rahman, **Organization Development Specialist** |
| **Business Size:** | Small Business, Women and Minority Owned |

LEGAL POLICY | PRIVACY POLICY | ACCESSIBILITY POLICY | CAREERS | CONTACT US | SITE MAP
Copyright © 1994 - 2010 Bashen Corporation. All rights reserved.
508 SITE

**NMBC**   TOP 2008 BUSINESS   NWBOC WBE CERTIFIED   Inc. 50   HMSDC   WBEA   Diversity MINORITY

Exhibit - I



# FINAL AGENCY DECISIONS

HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES          CONTACT US | CAREERS

**SERVICES**

» **Federal Sector EEO Compliance**

› **Counseling**

› **Investigations**

› **ADR**

› Final Agency Decisions (FAD)

**Training**

**GSA Schedule**

## Final Agency Decision - FAD

Bashen employs full time FAD writers, whose experience is garnered from their investigation experience, and knowledge of the federal regulations, relevant statutes and seminal case law. The EEOC's Model Program states that, "One-Stop Shopping for investigations and final decisions produced quick results." Bashen provides the recommended "One-Stop Shopping." Our FADs are well-written and render sound interpretations of legislative and seminal case law. Our FADs include:

- Factual analysis to determine the adequacy of the complaint investigation
- Legal analysis applied to the reported facts
- Detailed appeal rights

LEGAL POLICY | PRIVACY POLICY | ACCESSIBILITY POLICY | CAREERS | CONTACT US | SITE MAP

Copyright © 1994 - 2010 Bashen Corporation. All rights reserved.

508 SITE

**NMBC**    TOP 2008 BUSINESS    **NWBOC** WBE CERTIFIED    **Inc. 50**    HMSDC    WBEA    Diversity ADVISORS

Exhibit-K



HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES          CONTACT US | CAREERS

## SERVICES

» Federal Sector EEO Compliance

· Counseling

› Investigations

› ADR

› Final Agency Decisions (FAD)

Training

GSA Schedule

# Counseling

EEO counseling deliverables include, but are not limited to:

- Analyzing the issues and bases of the complaint
- Informing complainants of their rights and responsibilities
- Determining and identifying potential witnesses
- Conducting witness interviews
- Gathering and reviewing documentary evidence and statistical data, when applicable
- Identifying potential opportunities for resolution (when appropriate), including promotion of agency ADR programs
- Preparing an EEO Counselor's Report
- Adhering to regulatory time frames

LEGAL POLICY | PRIVACY POLICY | ACCESSIBILITY POLICY | CAREERS | CONTACT US | SITE MAP

Copyright © 1994 - 2010 Bashen Corporation. All rights reserved.

508 SITE

Exhibit-K



HOME | CONTACT US | CAREERS | SITE MAP

HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES          CONTACT US | CAREERS

**SERVICES**

» Federal Sector EEO Compliance

- Counseling

› Investigations

› ADR

› Final Agency Decisions (FAD)

**Training**

**GSA Schedule**

## Counseling

EEO counseling deliverables include, but are not limited to:

- Analyzing the issues and bases of the complaint
- Informing complainants of their rights and responsibilities
- Determining and identifying potential witnesses
- Conducting witness interviews
- Gathering and reviewing documentary evidence and statistical data, when applicable
- Identifying potential opportunities for resolution (when appropriate), including promotion of agency ADR programs
- Preparing an EEO Counselor's Report
- Adhering to regulatory time frames

LEGAL POLICY | PRIVACY POLICY | ACCESSIBILITY POLICY | CAREERS | CONTACT US | SITE MAP

Copyright © 1994 - 2010 Bashen Corporation. All rights reserved.

508 SITE

     

Exhibit-L



# FEDERAL SECTOR EEO SOLUTIONS

HOME | ABOUT US | SERVICES | SOFTWARE | PARTNERS | CLIENTS | RESOURCES        CONTACT US | CAREERS

**SERVICES**

› Federal Sector EEO Compliance

› **Counseling**

› **Investigations**

› **ADR**

› **Final Agency Decisions (FAD)**

**Training**

**GSA Schedule**

# Federal Sector
# EEO Compliance Services

Bashen Corporation provides Equal Employment Opportunity Compliance Administration services to hundreds of clients, including many federal agencies. Bashen provides federal agencies with the following EEO solutions:

- Counseling
- Formal Investigations
- ADR
- FADs
- Customized Training

Bashen's years of experience and uncompromising commitment to quality precipitated the development of Bashen's business process model for the federal sector. SEFIS, Standardized EEO Federal Investigative Services, streamlines the EEO investigative process, which enhances efficiencies. Using Bashen's software EEOFedLink®, SEFIS provides a SaaS (Software as a Service) Technology driven approach incorporating MD 110 and 29 CFR 1614. EEOFedLink is Bashen's Federal version of its patented web based EEO case management software, LinkLine®, which is used by the private sector. SEFIS includes On-Line Reporting System technology, EEO Investigations, Reports of Investigation, Final Agency Decisions, and fair employment practices and diversity training. Bashen is a certified, minority woman owned enterprise and is an approved Federal GSA Contractor under Schedule 738X Human Resources & Equal Employment Opportunity Services, Category 595-25. Click here for our GSA information.

## Bashen Staff

Collectively, Bashen's Management team possesses over 100 years of compliance experience with a focus on EEO claims, affirmative action initiatives, fair employment practices compliance and risk management. Bashen's highly qualified and diverse workforce is peerless. Bashen's full-time consultant staff comprises attorneys and human resources professionals who possess specialized expertise regarding workplace disputes and EEO compliance best practices. **Bashen does not hire contract investigators.**

All Consultants are trained in Bashen's unique and innovative business process model, strategic mission and customer service philosophy. Bashen's internal professional development program includes a series of modules regarding claims handling and investigative best practices, EEO compliance, affirmative action initiatives, customer services, business ethics, alternative dispute resolution, as well as EEO compliance and employment law updates. Bashen's professional staff works in concert with the agency's EEO personnel to ensure compliance with applicable laws and the Statement of Work.

LEGAL POLICY | PRIVACY POLICY | ACCESSIBILITY POLICY | CAREERS | CONTACT US | SITE MAP

Copyright © 1994 - 2010 Bashen Corporation. All rights reserved.

508 SITE 

NMBC    TOP 2008 BUSINESS    NWBOC WBE CERTIFIED    Inc. 500    HMSDC    WBEA    Diversity ADVISOR

May 2, 2000

United States House of Representatives
Committee on Banking & Financial Services
1006 Congress, 2129 Rayburn House Office Building
Washington, DC 20515-6050

To The Honorable Committee:

S. J. Bashen Corporation ("SJBC") extends its gratitude to the Subcommittee on Financial Institutions and Consumer Credit ("Committee") for the opportunity to testify regarding the Fair Credit Reporting Act ("FCRA") and investigations conducted by outside consultants and attorneys ("consultants") regarding civil rights violations and employee misconduct. It is imperative to analyze the FCRA and civil rights laws collectively, rather evaluating these complex issues only in the FCRA context. After such an examination, the Committee will undoubtedly conclude that investigations regarding civil rights violations and employee misconduct must be exempt from the FCRA's required procedures.

## FCRA and the FTC

It is acknowledged that the FCRA was enacted by Congress in response to the increasing public concerns about the rights of consumers and the expanding use of credit in our society. Consumer reports are completely discretionary, and have been historically designed to garner personal financial, credit, and other general information to ascertain an applicant's eligibility for employment. The FCRA, however, was not enacted to prevent, identify, and remedy workplace discrimination based on a consumer's race, color, religion, sex, national origin, or any other protected categories. None of the Federal Trade Commission's ("FTC") standard publicized literature references workplace discrimination or harassment. Nonetheless, the FTC *Vail* opinion letter has expanded the FCRA's purview to include claims of illegal discrimination and harassment in the workplace. As a result, civil rights laws that have protected employees (consumers) for 35 years are in jeopardy.

## Consultants and Consumer Reporting Agencies

SJBC is the most prominent human resources consulting firm in the country and SJBC's investigates allegations of civil rights violations and employee misconduct. SJBC's consultants have collectively investigated thousands of claims involving discrimination and employee misconduct, and not one credit report has ever been requested on any complainant, the alleged offender, or witness. Credit reports and credit histories are completely irrelevant to these types of investigations. Civil rights and employee misconduct investigations examine *specific* allegations of illegal activities. Conversely, consumer reports and consumer investigative reports provide *general* information regarding a consumer's "...character, general reputation, personal characteristics, mode of living..." for "...employment purposes..." Accordingly, SJBC is clearly the exemplar consulting firm that is the antithesis of a consumer reporting agency.

## Civil Rights Laws

The Federal Civil Rights Act of 1964 and 1991, and similar state and municipal laws, impose an affirmative obligation on employers to investigate discrimination complaints. Civil rights investigations are not discretionary, in contrast to investigative consumer reports. Under civil rights laws, employers risk liability for the acts of employees, vendors, and customers who discriminate against employees on the basis of race, religion, color, national origin, ancestry, disability, medical condition, marital status, sex, or age. The Supreme Court recently affirmed the duty to investigate complaints of harassment, establishing an affirmative defense to liability only when employers exercise reasonable care to "correct promptly any...harassing behavior."[1] Further, the Equal Employment Opportunity Commission ("EEOC") issued guidelines[2] that require an employer to investigate workplace harassment.

Employers that wish to assert the affirmative defense afforded by *Faragher* and *Ellerth* must a.) exercise reasonable care to prevent and correct promptly any harassing behavior, and b.) must prove that the complaining employee failed to use any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. Simply, an employer must have a widely disseminated anti-harassment policy and a complaint procedure to protect employees (consumers). Prompt, thorough, impartial, objective, confidential, and competent investigations are imperative to any effective anti-discrimination policy and complaint procedure, and are required by law and EEOC regulations. For these reasons, many employers retain independent, expert consultants to ensure that proper investigations are conducted.

## Impact of *Vail* Letter/FCRA Procedures

The FTC *Vail* opinion letter potentially undermines the preventative and remedial essence of all civil rights laws by discouraging employees from complaining of harassment; by inhibiting employee witnesses from participating in harassment investigations; and by stifling witness candor. Competent discrimination investigations are the only available means to assess the allegations, issues, facts, and the appropriate remedial measures, when applicable. The opinion stated by the FTC in the *Vail* letter requires employers to garner written authorization from alleged harassers before consultants could prepare investigative reports regarding the alleged civil rights violations. There is no such requirement under any of the discrimination laws, and such a requisite would be grossly inappropriate in a civil rights framework because the purported violator would have control over the investigation. The EEOC guidelines state, "The alleged harasser should not have supervisory authority over the individual who conducts the investigation and should not have any direct or indirect control over the investigation."

Pursuant to the FTC *Vail* opinion letter and Section 604 of the FCRA, the employer would also be required to give the harasser a copy of the consultant's report if the allegations are substantiated and legally mandated remedial measures are implemented against the harasser. But first, the employer must wait five days before effecting remedial measures, which negates another civil rights law mandate: the remedial measures must be prompt or the employer faces greater consequences. Also, the harasser will still have contact with the complainant, which may create a volatile situation that could spark increased harassment, witness intimidation, threats, and/or violent reprisals. Giving confirmed harassers copies of consultants' reports will breach confidentiality, and the harassers will know who was interviewed and the content of their interviews. Civil rights laws and the EEOC regulations require confidentiality.

Employees will be chilled from reporting civil rights violations if they know the alleged offender will receive a copy of the report. The EEOC guidelines state, "An employer should make clear to employees that it will protect the confidentiality of harassment allegations to the extent possible" and "information about the allegation of harassment should be shared only with those who need to know about it." Complainants and witnesses are usually hesitant to speak with any investigator, even when reasonable confidentiality is promised. But such a promise is typically the only reason most witnesses agree to be interviewed. Breaching confidentiality to comply with the FCRA's procedures will decimate most attempts to curb workplace discrimination, and consumers will suffer the most. Imagine if the culprit is an officer, executive, a supervisor, a respected associate, a co-worker they fear, or a peer or a supervisor who has a vengeful or violent propensity. Employees will lose faith in the anti-harassment policy and the complaint procedure, and the harassment may continue unabated. According to the EEOC guidelines, a complainant may assert that he or she did not use an employer's complaint procedure because he or she perceived it as ineffective. If proven, an employer may lose the affirmative defense. This is certainly inconsistent with the spirit and the letter of civil rights laws which are to prevent, identify, and redress workplace discrimination.

Disclosing a discrimination investigative report to the harasser may also expose the employer to more retaliation claims. The complainant and witnesses adverse to the harasser may perceive that the harasser is treating them more harshly because the harasser is now able to identify them as his or her accusers. There must be an adverse employment action to sustain a viable retaliation claim, but the perception, not a genuine adverse employment action, may precipitate a retaliation claim which forces an employer to incur the time and expense to investigate and manage a complaint that could have been avoided. Civil rights investigative results must be limited to those individuals with the qualified privilege and the need to know. There is no FCRA mandate that the alleged harasser must maintain confidentiality once he or she secures a copy of an investigative report. Consequently, all employees who do not have the qualified privilege status should be precluded from reviewing any type of civil rights investigative report to assure reasonable confidentiality. This will mitigate future liabilities that are varied and potentially immense.

## EEOC Guidelines

The EEOC dictates that employers should ensure that "prompt, thorough, and impartial" investigations are conducted when complaints are made. Impartial investigations are more readily attained by independent consultants who do not have personal or professional relationships with the complainants, witnesses, and the accused. Further, an independent consultant does not have a vested interest in a favorable outcome, and is often perceived as detached and neutral by the employees and the EEOC. Accurate investigative findings and conclusions afford greater protection to the consumer and the employer. Internal personnel typically have many other duties that are extraneous to the exhaustive discrimination complaint process, and they simply need a third party consultant to conduct investigations. Many companies do not have qualified internal human resources or legal personnel to investigate alleged civil rights violations, and those that do are typically inundated with complaints. Outsourcing to competent consultants solves both problems.

According to the EEOC guidelines, "The employer should ensure that the individual who conducts the investigation will objectively gather and consider the relevant facts." Objectivity is imperative to discrimination investigations, especially in harassment cases where witnesses must be asked proper questions and credibility must be weighed. Many employers and employees are concerned that internal personnel are too familiar with the employees and the complaint circumstances to be truly objective. This potential objectivity dilemma, actual or perceived by employees, the EEOC, federal and state court

judges, should never be applicable to independent consultants who report all facts; good, bad, or innocuous.

The EEOC states, "Whoever conducts the investigation should be well-trained in the skills that are required for interviewing witnesses and evaluating credibility." Many internal personnel may lack the necessary training and experience to adeptly investigate alleged civil rights violations or employee misconduct. Others are concerned about impartiality and objectivity. Very few from either category have the time to remain current on the continual changes in state and federal laws, which are essential to quality civil rights investigations. Consequently, employers routinely outsource this specialized task to qualified consultants who conduct timely, thorough, impartial, objective, confidential, and competent investigations. Complainants may not use a complaint procedure that they perceive as biased, subjective, and administered solely by internal personnel. They may accordingly attempt to defeat the affirmative defense by establishing that the employer's reporting procedure is defective. "Negligent investigation" is becoming an increasingly popular allegation in discrimination litigation. It is much more difficult to prove if experienced, independent consultants conduct the investigations.

## Disputing Consumer Reports

Section 611 of the FCRA provides the means for a consumer to dispute the details of a consumer report, which is understandable in the fair credit reporting context; this information is most often finite and should be accurately reported. A creditor must stop reporting inaccurate information after the consumer has successfully challenged the findings as inaccurate, and a consumer reporting agency must reinvestigate the consumer's claims. Again, this seems reasonable in the measurable world of financial and credit reporting.

Harassment investigations, conversely, are typically very convoluted at the inception. These investigations are commonly fraught with innuendo and recrimination, and perhaps importantly, the perceived or actual *intent* of the harasser and the complainant. Intent is further muddled by witness statements. Under Section 611 of the FCRA, an alleged harasser could dispute the complainant's allegations as inaccurate or false, which usually happens anyway in civil rights investigations. But the FCRA gives the harasser greater dispute latitude by empowering him or her to assert that it was not his intent to harass or discriminate against another employee. Thus, he or she will assert that the reported information is inaccurate or false. How, then, could the complainant or the employer controvert the alleged harasser's dispute when intent is the issue under consideration? This is further complicated by witnesses who give similar or vastly different accounts of the alleged conduct. In this situation, which is common in discrimination investigations, should the complainant and the employer's investigating consultant be forced to stop reporting the behavior as harassment pursuant to the FCRA? Should the consultant be forced to reinvestigate, pursuant to the FCRA, simply because the harasser denies that he or she intended to harass or discriminate? What if the conduct did not constitute a civil rights violation, but violated a company policy that mandates disciplinary action? Will the harasser be able to dispute the findings as inaccurate? Should the harasser be able to sue the employer for allegedly breaching any one of the aforementioned FCRA procedures? Civil rights laws and common sense compel the obvious response: "absolutely not." However, these are genuine issues made possible by the FTC's interpretation of the FCRA in the *Vail* letter. Most employees who are accused of discrimination will initially, and instinctively, deny the charges in part or in whole. Individuals who violate civil rights laws or company policies seldom confess. Intent is not finite; it is nuance wrapped in subtle shades of gray. A competent investigator must possess the skills, impartiality, objectivity, and experience to discern truth from fiction, and then reasonably determine if some type of personnel policy breach or legal violation has occurred.

The FTC opinion would also compromise the various privileges afforded by the Federal Rules of Civil Procedure, and probably most state rules of civil procedure, such as attorney-client privilege, party communications, work-product, and reports that are prepared by consultants in anticipation of litigation. Discovery issues are decided during litigation by judges on a case-by-case basis. Judges have the wisdom and qualifications to weigh the benefits and detriments of producing pertinent documents. The FTC opinion would require employers to give the confirmed harasser a copy of the investigative report without filing a lawsuit, which would eliminate the benefit of judicial consideration that may preclude the production of the documents or portions of the documents. All of these safeguards and privileges are forfeited under the FTC's production requirement.

## Internal Investigating Personnel/Outside Consultants

Like internal investigating personnel, outside consultants who conduct civil rights and employee misconduct investigations should be exempt from the FCRA procedural requirements. Employers and employees alike want the most qualified, objective professionals conducting discrimination investigations to better protect all parties. Such investigations are more readily obtained by independent consultants who specialize in these types of investigations. It is reasonable to conclude that an employee (consumer) accused of discrimination would want a competent, neutral party to investigate the allegations against him or her, rather than inexperienced internal personnel who may be perceived as having a vested interest in a particular outcome.